# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CLIFFORD RUTH, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 11-3487-CV-S-RED-P |
| STATE OF MISSOURI, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Clifford Ruth, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 5, 2011, seeking to challenge his 2008 conviction and sentence for statutory rape, which were entered in the Circuit Court of Cedar County, Missouri.

The petition raises four grounds for relief: "(1) Susan Pumpfree's testimony as an expert witness & allowing (state's exhibit #13) into evidence. (2) the trial court not granting defense a continuance, to obtain an expert witness. (3) the trial court allowing statements to be given to jury without proper redaction. (4) to testify on my behalf." (Doc. No. 1) (direct quote from original petition). Respondent contends that grounds 1 and 3 are without merit and grounds 2 and 4 are procedurally defaulted.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Victim was born in April 1995. She is the daughter of G.C. (Mother). [Petitioner] is Mother's brother. On June 2, 2006, [petitioner] was living with Mother, her children, and their father. Victim was then 11 years old. The following is a summary of the testimony given by Victim and Mother concerning the events of that day.

Victim returned home from summer school between 3:00 and 3:30 p.m. Around 4:00 p.m., [petitioner] announced that he was going to walk to the store and buy some cigarettes and some minutes for a cell phone. [Petitioner] asked Victim if she would go with him, and he offered to buy her a soda. Mother gave Victim permission to go.

[Petitioner] and Victim walked 17 blocks to Ehlers Variety Store, stopping for a soda on the way. After [petitioner] bought minutes to put on the phone, they went to the Lions Club Park because Victim wanted to rest. They went to a secluded picnic table in a shelter at the very back of the park. They discussed playing pool. [Petitioner] said that if Victim won, she got to go home; if he won, he got "to rape" her. Victim did not know what [petitioner] meant. [Petitioner] then pulled down Victim's pants, pulled down his pants, put his penis in her vagina, and started "humping" her. It "hurt really bad." Victim kicked and slapped [petitioner] until he fell to the ground. She then pulled up her pants and ran home. [Petitioner] caught up with Victim three blocks from home and threatened to kill her if she told anyone what happened. Victim then ran the rest of the way home.

About 6:30 p.m., Victim came running into the yard. She was crying and told Mother, "I need to talk to you now!" Victim told Mother that [petitioner] had first stuck his finger in her "pee-pee" and that she tried to kick him in the face to get away. Victim reiterated [petitioner's] threat to kill Victim if she reported what [petitioner] had done. Victim then said that [petitioner] "stuck his thing in her pee-pee" and had sex with her. About 45 minutes later, Mother found [petitioner] three blocks from the house. Mother told [petitioner] what Victim had said. [Petitioner] replied that he did not care because he had not done anything.

Mother returned home and found Victim still crying. Mother suggested that they go to the police station, but Victim begged Mother not to do so. She consoled Victim until she fell asleep. About 9:00 p.m., Victim awoke and complained of pain. Mother and her sister examined Victim and observed that her genital area was red and swollen.

The next day, Mother and her sister took Victim to the police station. Mother told Officer Vance Myers (Officer Myers) that Victim had been forcibly raped by [petitioner] the previous day between 4:30 and 6:30 p.m. Officer Myers sent them to the Joplin Children's Center.

> At the center, Victim was interviewed by Jeanie Stuart (Stuart). n.1
>
>> n.1 The interview was videotaped and admitted into evidence as State's Exhibit 7.
>
> During the interview, Victim said that [petitioner] had asked her to go with him to get some minutes on his phone. Afterwards, they went to the last table in the back of a picnic shelter. Victim said [petitioner] did a "nasty thing." He picked Victim up, laid her down on the picnic table and pulled Victim's pants down. [Petitioner] then pulled his pants down, climbed onto the table, got on top of Victim and started to hump her. [Petitioner] put his "private" inside Victim's "private[.]" It felt "nasty" and "slimy" and "it hurt." [Petitioner] took Victim's hand and tried to make her touch his "private." Victim slapped [petitioner] in the face. Victim started kicking and pushed [petitioner] off of the table. She pulled up her pants and ran. [Petitioner] could not catch up with her. Victim said [petitioner] told her that she would be grounded because she ran away. Victim said that her private was "all swollen" and it hurt.
>
> Susan Pumphrey (Pumphrey), a family nurse practitioner, performed a SAFE examination on Victim. Pumphrey also prepared a SAFE exam form that recorded certain information collected during the examination. This form was admitted as State's Ex. 13. Pumphrey testified that Victim had bruising of the labia. The coloring of the bruises indicated that they were between 24 and 48 hours old. There also was inflammation of the internal area around the hymen. This inflammation would not have been due to an infection or dermatitis. There was a swollen area of eschar, which is a type of new skin that develops after a person has suffered an abrasion. This was present at the posterior fourchette between the labia and the rectum in the perineal area. All of these injuries were consistent with the rape of a child.
>
> [Petitioner] did not testify or present any evidence. . . [and] was found guilty of statutory rape in the first degree and sentenced[.]

(Respondent's Exhibit E, pp. 2-5).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728

-3-

F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In ground 1, petitioner contends that the trial court erred in admitting State's exhibit # 13 and Susan Pumphrey's testimony into evidence.

This ground for relief raises evidentiary issues. "Questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases." Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989) (quoting Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)). Only if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process may a federal court grant habeas corpus relief on a state evidentiary issue. Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994).

Furthermore, on direct appeal, the Missouri Court of Appeals held as follows:

*Point I*

> In [petitioner's] first point, he contends the trial court erred by permitting Pumphrey "to testify to what [Victim] told her about the alleged rape" and by admitting State's Ex. 13 because said testimony and report included Victim's version of events. [Petitioner] argues

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

that the foregoing evidence was inadmissible hearsay that improperly bolstered Victim's testimony in violation of [petitioner's] due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and art. I, § 10 of the Missouri Constitution. Because we find the foregoing evidence to be cumulative of properly admitted testimony from four other witnesses, [petitioner's] point must be denied.

The following facts are germane to our discussion of this point. Mother was the State's first witness. During her testimony, she gave the jurors a complete account of what Victim said [petitioner] had done to her.

Victim was the State's second witness. During her testimony, she gave the jury a complete account of what [petitioner] had done to her. Victim was subjected to thorough cross-examination by defense counsel. Portions of Victim's testimony on both direct and cross-examination included a recitation of statements Victim had made to Mother when Victim returned home and to Stuart during the Children's Center interview.

Officer Myers was the State's third witness. During his direct examination, he gave the following testimony:

> Q: And on [June 3rd], did you have a report come to the police station with regard to [Victim]?
>
> A: Yes.
>
> Q: And can you tell us how that came about?
>
> A: I was contacted at the police station by her mother, who reported to me that [Victim] had this disclosed to her that she had been forcibly raped.
>
> Q: And they came to the police station?
>
> A: Yes, [Victim], her mother and her mother's sister came to the police station.
>
> Q: And what was reported to you at that time?
>
> A: . . . [H]er mother told me that the daughter had

Case 6:11-cv-03487-RED   Document 14   Filed 06/14/12   Page 5 of 16

> left the house with her uncle, [petitioner]. When she returned, that her daughter came to her in the backyard of the home and disclosed that he had touched and hurt her.
>
> Q: And when did that incident supposedly occur?
>
> A: The previous day, June 2nd, between 4:30 and roughly 6:30 in the afternoon.

Stuart was the State's fourth witness to testify as to what Victim said [petitioner] had done to her. During her testimony, the prosecutor offered State's Ex. 7. This exhibit was a videotape of the interview of Victim and Stuart conducted at the Children's Center. The videotape contained a very detailed recital of Victim's version of what [petitioner] had done to her.

Pumphrey was the State's fifth witness. During her direct examination, the prosecutor offered State's Ex. 13. Defense counsel made the following objection:

> We would object because it contains hearsay, for what the girl says to her as part of the history. I am sure from your Motion in Limine that you are going to overrule. We would like to make that an ongoing objection.

The trial court overruled the objection, granting a continuing objection and admitted Ex. 13 in evidence. n. 2

> n. 2 The handwritten Narrative portion of Ex. 13 stated:
>
> Last evening invited Pt to store "buy you a pop" convinced to stop @ park to cool off on way home. Laid Pt on picnic table in shelter house & digitally penetrated her, scooted away & kicked in face Perp grabbed leg & pulled back & penetrated with penis & then rolled her over and rectally penetrated. Told her if she told he would kill her. "humped me" "going up & down" "on top of me" his clothes were down, kicked him pulled pants up & ran. He couldn't catch me he said I was going to be so grounded

Case 6:11-cv-03487-RED   Document 14   Filed 06/14/12   Page 6 of 16

Thereafter, Pumphrey gave the following testimony:

> Q: Would you just go ahead and describe her demeanor to us?
>
> A: Her affect and behavior was calm. She was cooperative with the exam, matter of factually about what had happened to her. Prior to coming to the center, we would say, "Why are you here today?" And she would say that she had gone with her uncle to get a pop. And on the way home, they had stopped at a park. And he had laid her down on a picnic table and pulled her pants down and got on top of her and humped her. She said that she kicked him off with her feet, pulled up her pants and ran home. And he said that she would be in big trouble and she would be grounded if she said anything. And that was pretty much all of the information I obtained about that part of why she was here.

On appeal, [petitioner] argues that the trial court abused its discretion in admitting Ex. 13 and the above-referenced testimony from Pumphrey. n. 3

> n. 3 [Petitioner's] contention that this evidence improperly bolstered Victim's testimony is not preserved for review because that specific objection was not asserted below. *See* **State v. McFarland**, 259 S.W.3d 621, 624 (Mo. App. 2008); **State v. Coram**, 231 S.W.3d 865, 869-70 (Mo. App. 2007).

In particular, [petitioner] argues that it was the identification of him as the person who raped Victim that necessitates a reversal and remand for a new trial.

It is unnecessary to decide whether the admission of Ex. 13 and Pumphrey's testimony was error in order to decide [petitioner's] first point. It is well-settled that, in matters involving the admission of evidence, this Court reviews for prejudice, rather than mere error. **State v. Bisher**, 255 S.W.3d 29, 33 (Mo. App. 2008). Reversal is required only if the error more likely than not affected the outcome of the case. **State v. Walkup**, 220 S.W.3d 748, 757 (Mo. banc 2007).

We are unable to reach that conclusion here. The information about

-7-

Victim's version of events that was adduced by the State via Ex. 13 and Pumphrey's testimony was cumulative of a large quantity of evidence that had already been presented to the jury during the testimony of Mother, Victim, Officer Myers and Stuart. Mother, Myers and Stuart each testified, in greater or lesser detail, about Victim's version of what [petitioner] did to her. All three of these witnesses specifically testified that Victim identified [petitioner] as the person who raped her. On appeal, [petitioner] has not challenged the admissibility of any of that evidence. "Where challenged evidence is cumulative to other evidence, the admissibility of which is unassailed, any error in receiving the disputed evidence is harmless beyond a reasonable doubt." *State v. Clark*, 26 S.W.3d 448, 458 (Mo. App. 2000); *see also State v. Fuente*, 871 S.W.2d 438, 443-44 (Mo. banc 1994); *State v. Duncan*, 945 S.W.2d 643, 648-49 (Mo. App. 1997).

In addition, Victim provided the jury with her own account of events when she was called as a witness by the State. During direct examination, she identified [petitioner] as the person who raped her. She was subjected to a thorough cross-examination by defense counsel. As this Court noted in *State v. Lebbing*, 114 S.W.3d 877 (Mo. App. 2003), prejudice will not be found in the admission of hearsay testimony when the declarant was a witness at the trial, testified about the same subject matter and was subject to cross-examination. *Id.* at 880; *see State v. Mayabb*, 43 S.W.3d 429, 435 (Mo. App. 2001) (same holding). Assuming *arguendo* that the evidence challenged by [petitioner] in this point was properly admitted, he is entitled to no relief because he suffered no prejudice. Point I is denied.

*Point II*

In [petitioner's] second point, he contends the trial court abused its discretion in permitting Pumphrey to testify as to "what happened to [Victim]" i.e., that the injuries that Pumphrey observed were "consistent with the history that [Victim] gave" because Pumphrey's testimony "improperly bolstered" Victim's testimony. The following facts are germane to our discussion of the point.

During Pumphrey's testimony, the prosecutor ultimately asked, "based on your total observation of [Victim] and your examination, your training and experience in the practice of SAFE Examinations, do you have an opinion with regard to what had happened to [Victim]?" [Petitioner] objected on the ground that it is the jury's job

-8-

to decide what happened, and a short break occurred. After the break, the court ruled as follows:

> I believe your question was: Based upon your examination and history and physical, your experience in performing SAFE Examinations, do you have an opinion as to the cause of the injuries? And I believe that the witness, based upon the foundation that has been laid, can say it is consistent with a sexual assault.
>
> Now, if the Prosecutor goes beyond that and says, why do you believe that? Oh, because I watched her and I think she is telling the truth. That's when it becomes improper, but I think she will be allowed to testify that she believes it comes from a sexual assault.
>
> So, for the particular question that was asked, I will overrule the objection. If it goes beyond that, where it appears to be bolstering credibility, then, yes, it is inadmissible and I will not allow that type of testimony.

The court reporter then read back the question and the following testimony was given:

> A. I believe that the injuries that I observed are consistent with the history that she gave.
>
> Q. You are talking about the history and that is of the sexual assault?
>
> A. Yes.

[Petitioner] argues that Pumphrey's testimony here "improperly bolstered" Victim's testimony. This Court disagrees.

In child sexual abuse cases, particularized expert testimony concerning the credibility of a specific victim's allegations of abuse is not admissible because it usurps the decision-making function of the jury. ***State v. Churchill***, 98 S.W.3d 536, 539 (Mo. banc 2003); ***State v. Price***, 165 S.W.3d 568, 572-73 (Mo. App. 2005); ***State v. Collins***, 163 S.W.3d 614, 620-21 (Mo. App. 2005). In contrast, a

-9-

trial court has broad discretion to admit expert testimony that describes generalized behaviors and other characteristics commonly found in victims of sexual abuse. *Churchill*, 98 S.W.3d at 539. Such testimony can be a proper topic of expert testimony, because it "assists the jury in understanding the behavior of sexually abused children, a subject beyond the range of knowledge of the ordinary juror." *State v. Bowler*, 892 S.W.2d 717, 720 (Mo. App. 1994); *State v. Tyra*, 153 S.W.3d 341, 348 (Mo. App. 2005). Here, Pumphrey's testimony that her findings were "consistent with" Victim's history is entirely acceptable expert testimony. *See Price*, 165 S.W.3d at 573 (nurse's testimony that "the rectal scarring observed on Victim was 'consistent' with sexual abuse, was admissible expert testimony"); *State v. Galindo*, 973 S.W.2d 574, 577 (Mo. App. 1998) ("doctor's testimony that the physical findings resulting from the examination were consistent with the history given by the victim" was admissible expert testimony); *see also State v. Silvey*, 894 S.W.2d 662, 671 (Mo. banc 1995) (social worker's testimony that victim displayed behavioral indicators consistent with child abuse was admissible expert testimony); *State v. Matthews*, 37 S.W.3d 847, 848-50 (Mo. App. 2001) (testimony from counselor and psychologist concerning characteristics and symptoms of sexually abused victims in general, and characteristics and symptoms seen in victim at issue, was admissible expert testimony). Point II is denied.

(Respondent's Exhibit E, pp. 5-11).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may

-10-

Ground 1 is denied.

## GROUNDS 2 & 4

In ground 2, petitioner contends that the trial court erred in "not granting defense a continuance, to obtain an expert witness," and in ground 4, petitioner asserts, "to testify on my behalf." Respondent correctly maintains that grounds 2 and 4 are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner has not raised the issues contained in grounds 2 and 4 before the Missouri Court of Appeals at any time. Therefore, petitioner has procedurally defaulted grounds 2 and 4.

Because petitioner's grounds are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has

---

grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

demonstrated "cause" for his procedural default.

Petitioner does not present any explanation for why he did not raise grounds 2 and 4 in state court and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 2 and 4. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 2 and 4 is barred.

Grounds 2 and 4 are denied.

### **GROUND 3**

In ground 3, petitioner contends that an error was made by "the trial court allowing statements to be given to jury without proper redaction." Although it is unclear in petitioner's petition to what "statement" he is referring, it is clear in his traverse (Doc. No. 13) that he is referring to State's Exhibit 13, the SAFE examination report.

To the extent that petitioner is alleging that the trial court erred in sending the SAFE

-12-

examination report to the jury without redacting it, on appeal from the denial of his Mo. Sup. Ct. Rule 24.035 Motion, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> [Petitioner's] premise is alleged trial court error in sending a SAFE exam report to the jury during deliberations without redacting references to rectal penetration, an uncharged act. [Petitioner] claims that trial counsel should have objected, and that appellate counsel should have raised this as plain error.
>
> *Trial Counsel*
>
> The motion court found that trial counsel's "purposeful tactic" was "to bring out all the conflicting statements made by the child, in order to be able to argue to the jury that the child's testimony was unreliable, because of the many conflicting statements made by her. This was acceptable trial strategy." The record abundantly confirms this finding.
>
> Trial counsel strategically focused on the subject of rectal penetration in an effort to highlight the child victim's inconsistencies and undermine her credibility. He laid the foundation in voir dire and his opening statement. He put into evidence and showed the jury a written statement citing the child's claim that [petitioner] "stuck it in her butt." He also made the mother admit during cross examination that her child "told you that [petitioner] put his private in her butt. Right?"
>
> Trial counsel also hammered away on this in summation. He reminded jurors of the child's claim that [petitioner] "[s]tuck his thing in her butt, which is important, because there is no anal injuries" and "no contact with her butt," and specifically drew the jury's attention to the SAFE exam now in question:
>
>> Does he or doesn't he put his private in her butt? That's important. Either [the child] or her [sic] is lying, both of them are within twenty-four hour period and why is it important is because it is in the SAFE Exam that there is no anal injuries.
>
> The record thus supports the motion court's strategy findings and simultaneously defeats the premise of trial error. Even improperly admitted evidence (which this was not) is not prejudicial if similar evidence came in without objection. ***State v. McFarland***, 259

-13-

S.W.3d 621, 625 (Mo. App. 2008). Nor can [petitioner] "utilize evidence in the pursuit of reasonable trial strategy, and then, turn around on appeal and claim that same evidence was inadmissible and prejudicial." ***State v. Carollo***, 172 S.W.3d 872, 876 (Mo. App. 2005).

In summary, [petitioner] was not prejudiced by counsel's failure to make a non-meritorious objection (***Storey v. State***, 175 S.W.3d 116, 132 (Mo. banc 2005)), or by evidence cumulative of properly admitted evidence (***Moss v. State***, 10 S.W.3d 508, 512 & n.13 (Mo. banc 2000)), and did not overcome either the presumption or motion court finding of sound trial strategy.

### *Appellate Counsel*

"Appellate counsel would have had to [raise this claim] as plain error. Counsel will not be deemed ineffective for failing to raise unpreserved error on appeal." ***Hughes v. State***, 232 S.W.3d 596, 602 (Mo. App. 2007).

### Conclusion

We need not extend our analysis or describe other reasons to affirm. [Petitioner's] arguments fail. The motion court did not clearly err.

(Respondent's Exhibit I, pp. 2-4).

The resolution of this ground by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

To the extent petitioner may be attempting to raise a new claim of ineffective assistance of trial counsel in his traverse, this Court can entertain only claims raised in the petition. Alternatively, if petitioner is attempting to clarify in his traverse that the ground raised in his petition is a claim of

-14-

ineffective assistance of counsel, because petitioner failed to raised such a ground before the Missouri Court of Appeals and does not show cause[3] and prejudice for such failure or new evidence of actual innocence, pursuant to the standards of Coleman and Schlup, petitioner's ground is procedurally defaulted.

Ground 3 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

                                                       */s/ Richard E. Dorr*
                                                       RICHARD E. DORR
                                                       UNITED STATES DISTRICT JUDGE

---

[3]Because petitioner does not allege ineffective assistance of post-conviction counsel as cause for his procedural default, Martinez v. Ryan, 132 S.Ct. 1309 (2012) does not apply.

Springfield, Missouri,

Dated: June 14, 2012.